# In re Aubrey Oliver POWELL, Respondent

File A29 847 097 - New York City

*Decided August 11, 1995*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Under section 242B(e)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(e)(3) (1994), an alien who has received oral notice in the alien's native language or in another language the alien understands and written notice in the final order of deportation of the consequences for failing to appear for deportation, and who nevertheless fails to appear for deportation at the time and place ordered, other than because of exceptional circumstances, is ineligible for adjustment of status under section 245 of the Act, 8 U.S.C. § 1255 (1994), for a period of 5 years after the date the alien was required to appear for deportation.

(2) When the Board of Immigration Appeals dismisses an appeal from an order of deportation issued an Immigration Judge, the Immigration Judge's order becomes the final order of deportation on the date of the Board's decision.

(3) Written notice of the consequences of an alien's failure to appear for deportation, provided in conjunction with an Immigration Judge's final order of deportation, constitutes the written notice required by section 242B(e)(3) of the Act.

FOR RESPONDENT: Stanley H. Wallenstein, Esquire, New York, New York

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Matthew T. Adrian, General Attorney

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, and COLE, Board Members

DUNNE, Vice Chairman:

## I.  PROCEDURAL HISTORY

In a decision dated November 3, 1992, this Board dismissed the respondent's appeal from an order of deportation entered by an Immigration Judge on June 23, 1992. The respondent failed to surrender for deportation on March 17, 1993. On February 28, 1995, the respondent filed a motion to reopen with this Board in order that he might seek adjustment of status under section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255 (1994). The respondent's motion to reopen will be denied.

In a decision dated June 23, 1992, an Immigration Judge found the respondent deportable as charged, denied his application for suspension of deportation under section 244(a)(1) of the Act, 8 U.S.C. § 1254(a)(1) (1988), denied his request for the privilege of voluntary departure in the exercise of discretion, and ordered the respondent deported from the United States. At that time he was informed of the consequences should he fail to report for deportation. The Immigration Judge's order was upheld by this Board in a decision dated November 3, 1992.

Approximately 9 months after having admittedly been informed by the Immigration Judge of the harsh consequences should he fail to surrender for deportation as required, the respondent did not surrender for deportation on March 17, 1993. On October 28, 1994, approximately 1 ½ years after failing to surrender for deportation, the respondent pled guilty to the offense of being an illegal alien in possession of a firearm under 18 U.S.C. § 922(g)(5) (1994), an aggravated felony under section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (1994). The respondent's offense resulted in a renewal of interest in the respondent by the Immigration and Naturalization Service, which is still seeking his deportation. Subsequently, on February 28, 1995, almost 2 years after he was supposed to surrender for deportation, the respondent filed the instant motion to reopen with this Board, arguing that he is now eligible for adjustment of status under section 245 of the Act, and alleging that his positive equities outweigh the adverse factors in the record and that his case merits reopening in the exercise of discretion.

## II.  ISSUES

There are two issues to be resolved in this case. First, must the respondent's motion to reopen be denied because he is ineligible for adjustment of status under section 245 of the Act due to the provisions of sections 242B(e)(3) and (5) of the Act, 8 U.S.C. §§ 1252b(e)(3) and (5) (1994)? Second, should the respondent's motion to reopen be denied because the respondent is undeserving of a favorable exercise of discretion?

### A.  Section 242B of the Act

### 1.  Definition of Final Order of Deportation

Section 242B(e)(3) of the Act provides for a limitation on discretionary relief for failure to appear under a deportation order. Section 242B(e)(3) of the Act states:

> (A) IN GENERAL.-Subject to subparagraph (B), any alien against whom a final order of deportation is entered under this section and who fails, other than because of exceptional circumstances, to appear for deportation at the time and place ordered shall not be eligible for relief described in paragraph (5) for a period of 5 years after the date the alien was required to appear for deportation.
>
> (B) WRITTEN AND ORAL NOTICE REQUIRED.-Subparagraph (A) shall not apply to an alien against whom a deportation order is entered unless the Attorney General has

provided, orally in the alien's native language or in another language the alien under-
stands and in the final order of deportation under this section of the consequences under
subparagraph (A) of the alien's failure, other than because of exceptional circumstances,
to appear for deportation at the time and place ordered.

Accordingly, aliens who have received the proper written and oral notice
of the consequences of failing to appear for their deportation at the time and
place ordered, and who cannot establish exceptional circumstances for their
failure, are ineligible to apply for voluntary departure under section
242(b)(1), suspension of deportation or voluntary departure under section
244, or adjustment or change of status under sections 245, 248, or 249 of the
Act. *See* section 242B(e)(5) of the Act.

In his memorandum in support of his motion and in reply to the Service's
opposition, the respondent admits that he failed to surrender for deportation
as required on March 17, 1993. Nevertheless, he asserts that section
242B(e)(3) of the Act does not render him ineligible for adjustment of status
under section 245 because he avers that he did not receive written notice in
his final order of deportation informing him of the consequences of failing to
appear for his deportation.

The record establishes that the Immigration Judge's order of deportation
was accompanied by both a written and an oral notice of the consequences for
failing to surrender for deportation as required. A copy of the written notice,
dated June 23, 1992, containing the limitations on discretionary relief for
failure to appear was included in the record of proceedings by the Immigra-
tion Judge. The Immigration Judge noted that the notice was being provided
to the respondent. The Immigration Judge also provided the oral notice of the
consequences for failing to appear for deportation. The procedure employed
by the Immigration Judge in providing the written notice to the respondent,
with an oral notation to the record and with a copy of the written notice kept
in the record of proceedings, is utilized precisely so that respondents may not
subsequently make baseless claims regarding the nonreceipt of the requisite
written notice in order to evade the proscriptions of section 242B of the Act.

Thus, the record establishes that the respondent received both a written
and an oral notice in conjunction with the Immigration Judge's order of
deportation in the instant case. Accordingly, the sole issue is whether section
242B(e)(3) places upon this Board the responsibility for notifying an alien of
the consequences of failing to surrender for deportation in those instances
where appeal is taken to this Board. We find that when the Board dismisses
an appeal from an Immigration Judge's order of deportation, the Immigration
Judge's order becomes the final order of deportation on the date of the
Board's decision. Therefore, any notice regarding limitations on the right to
apply for discretionary relief which is provided in conjunction with the
Immigration Judge's order has been provided in the final order of deportation
for purposes of section 242B(e)(3) of the Act.

The regulation at 8 C.F.R. § 243.1 (1995) concerns the deportation of aliens in the United States and defines a final order of deportation under the Act. The regulation provides:

> Except as otherwise required by section 242(c) of the Act for the specific purposes of that section, an order of deportation, including an alternate order of deportation coupled with an order of voluntary departure, made by the special inquiry officer in proceedings under part 242 of this chapter shall become final upon dismissal of an appeal by the Board of Immigration Appeals, upon waiver of appeal, or upon expiration of the time allotted for an appeal when no appeal is taken; or, if such an order is issued by the Board or approved by the Board upon certification, it shall be final as of the date of the Board's decision.

Thus, for purposes of defining the final order of deportation in a particular matter, the regulation distinguishes between the effect of the Board's dismissal of an appeal from an Immigration Judge's order and the issuance of an order of deportation by the Board. Under 8 C.F.R. § 243.1, where the Board dismisses an appeal from an Immigration Judge's order of deportation it is the Immigration Judge's order of deportation which becomes the final order of deportation in the case. In fact, the regulation groups the dismissal of an appeal by this Board with instances in which no appeal has been taken. Therefore, the conclusion that it is the Immigration Judge's order of deportation which is made final by the Board's dismissal of an appeal is consistent with 8 C.F.R. § 3.39 (1995), which specifies that an Immigration Judge's decision becomes final upon waiver of appeal or upon expiration of the time to appeal. Conversely, under 8 C.F.R. § 243.1, where the Board issues an order of deportation or approves such an order on certification, the order of deportation which becomes final is the order entered by the Board on the date of the Board's decision. Once again, the regulation is consistent with the language of 8 C.F.R. § 3.39 which creates an exception for cases certified to the Board.

## 2. Prior Caselaw

Our interpretation is also consistent with *Matter of Lok*, 18 I&N Dec. 101, 105 (BIA 1981), *aff'd on other grounds*, 681 F.2d 107 (2d Cir. 1982), in which we indicated, relying in part on 8 C.F.R. § 243.1, that the entry of a final administrative order of deportation generally occurs when the Board renders its decision in the case upon appeal or certification or, where no appeal to the Board is taken, when appeal is waived or the time allotted for appeal has expired. *See also Matter of Alarcon*, 20 I&N Dec. 557 (BIA 1992); *Matter of Enriquez*, 19 I&N Dec. 554, 556 (BIA 1988). In that decision, we were primarily concerned with the timing of the entry of a final administrative order of deportation, whereas in the instant case we are concerned with determining which adjudicator actually issues the final order of deportation. Consistent with this proposition, we now clarify that where an appeal is dismissed by this Board without further order, an order of

deportation issued by the Immigration Judge becomes the final order of deportation on the date of the Board's decision dismissing the appeal.

### 3. Board's Role in Providing Notice

Finally, we note that principles of statutory interpretation require that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, and that statutes should not be interpreted in a manner which would lead to absurd or mischievous consequences. *See* 2A Norman J. Singer & C. Dallas Sands, *Sutherland Statutory Construction* §§ 46.06-.07 (5th ed. 1992). As an appellate body, this Board rarely has an opportunity for direct contact with the parties in a pending matter, nor do we have the authority to compel a party's personal appearance before this Board. Accordingly, any interpretation which would lead to the absurd result that this Board, which cannot compel a party's appearance, has the responsibility to provide the notice required under section 242B(e)(3) of the Act must be rejected.

In the instant case, the matter was not certified to the Board. Furthermore, our decision does not contain an order of deportation, nor did we issue an order of deportation in the instant case. The only order accompanying our decision was an order dismissing the respondent's appeal. Pursuant to 8 C.F.R. § 243.1, our order dismissing the respondent's appeal made the Immigration Judge's order of deportation, which is the only deportation order entered in this case, the final order as of November 3, 1992, the date upon which the respondent's appeal was dismissed.

We note that the respondent admits in his memorandum in support of his motion and in reply to the Service's opposition that the Immigration Judge, in ordering him deported, warned him of the consequences of failing to report for deportation. As previously noted, the record establishes that the Immigration Judge provided both oral and written notice of the adverse consequences of failing to report for deportation in entering the order of deportation. Inasmuch as the Immigration Judge's order of deportation constitutes the final order in this case, and the Immigration Judge provided the respondent with the requisite notice in his decision, we find that the respondent received the proper oral and written notice in the final deportation order required under section 242B(e)(3)(B) of the Act.

### 4. Exceptional Circumstances Exception

The respondent, who failed to surrender for deportation after having received the requisite notice of the consequences of such a failure, is precluded from establishing eligibility for adjustment of status under section 245 of the Act unless he can establish exceptional circumstances for his failure to surrender for deportation. The term "exceptional circumstances" is defined under section 242B(f)(2) of the Act, which states:

> The term "exceptional circumstances" refers to exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien.

In support of his motion to reopen, the respondent generally claims that he failed to surrender for deportation because he was unaware that he was to be deported on March 17, 1993. The respondent argues in support of his motion that the surrender notice, although addressed to the respondent, was not received by him. The respondent also admits that his former counsel received a copy of the surrender notice and was aware of the requirement that the respondent surrender. He implies that counsel did not provide him with this information by asserting that he was nevertheless unaware of the requirement that he surrender for deportation.

The respondent's motion does not allege ineffective assistance of his former counsel in failing to notify him of his surrender date, nor does the respondent substantiate this claim through the presentation of any objective evidence. Therefore, this Board has little reason to believe the respondent's unsubstantiated claim of ignorance as an excuse justifying his failure to surrender for deportation. However, even assuming that the respondent's former counsel did not notify him that he was supposed to surrender for deportation on March 17, 1993, the respondent is not absolved from responsibility.

The respondent was represented by counsel who was served with a copy of the notice directing the respondent to report for deportation. *See* 8 C.F.R. § 292.5(a) (1995). Yet, the respondent, who was informed by the Immigration Judge of the consequences of failing to surrender for deportation, has offered no evidence or argument indicating that he attempted to remain in contact with his former counsel or to remain apprised of the status of his case. Therefore, the respondent has failed to establish that his own actions did not contribute to any alleged lack of communication between himself and his former counsel. Accordingly, the respondent has failed to establish that his failure to surrender for deportation was due to exceptional circumstances as defined in section 242B(f)(2) of the Act.

Moreover, section 242B(f)(2) of the Act limits the definition of exceptional circumstances by providing that such circumstances must be as compelling as the serious illness of the alien or the death of an immediate family member of the alien. Vague, general, and unsubstantiated allegations that an alien was unaware that he was required to surrender for deportation are not sufficiently compelling to meet this definition. *See generally Matter of Barocio,* 19 I&N Dec. 255 (BIA 1985).

## 5. Finding of Statutory Ineligibility

Inasmuch as the respondent received both oral notice of the consequences of failing to surrender for deportation and written notice in the final order of deportation, and as the respondent has failed to establish exceptional circumstances for his subsequent failure to surrender for deportation at the time and

place specified by the Service, the respondent is ineligible pursuant to sections 242B(e)(3) and (5) of the Act to apply for adjustment of status under section 245 of the Act. Thus, the respondent's motion to reopen to apply for adjustment of status will be denied for failure to establish prima facie eligibility for the relief requested. *See INS v. Doherty*, 502 U.S. 314 (1992); *Matter of Coelho*, 20 I&N Dec. 464 (BIA 1992).

## B. Discretion

The incentives for an alien to endlessly delay his deportation through the misuse of procedures providing a seemingly endless opportunity to seek relief from deportation have long been recognized by the courts. *See INS v. Rios-Pineda*, 471 U.S. 444 (1985); *INS v. Wang*, 450 U.S. 139 (1981); *Reid v. INS*, 766 F.2d 113 (3d Cir. 1985); *Dallo v. INS*, 765 F.2d 581 (6th Cir. 1985); *Bonilla v. INS*, 711 F.2d 43 (5th Cir. 1983). In fact, in determining whether motions to reopen should be granted in order that an alien may request the privilege of voluntary departure under section 244(e) of the Act, we have held that an alien who has violated a lawful order of deportation by failing to report to the Service following notification that his deportation has been scheduled does not merit the favorable exercise of discretion required for reopening of deportation proceedings. *See Matter of Barocio, supra*.

In the instant case, the respondent has disregarded this nation's immigration laws for almost 13 years, beginning with his entry into the United States without inspection on May 8, 1982, and culminating in his violation of a lawful order of deportation by failing to surrender for deportation as required. The respondent failed to surrender for deportation after admittedly having been advised by an Immigration Judge that if he failed to surrender for deportation he would be ineligible to apply for certain forms of relief from deportation, including adjustment of status under section 245, the very relief sought in this motion to reopen. Moreover, as discussed, the respondent failed to show exceptional circumstances justifying his failure to surrender for deportation.

Furthermore, his presence in the United States has resulted in the commission of several criminal acts, including the commission of an aggravated felony, after he failed to surrender for deportation. His most recent criminal offense, regardless of the alleged mitigating circumstances, only confirms the respondent's undesirability as a resident of the United States. The respondent's past and present record of criminal and immigration violations substantially outweighs his positive equities, including his marriage to a United States citizen after the commencement of deportation proceedings and his accumulation of additional equities during his evasion of deportation. In fact, the respondent's equities acquired after the commencement of deportation proceedings, particularly his recent equities accumulated after having failed to surrender for deportation, are entitled to minimal weight. While family ties

are an important consideration under this nation's immigration laws, the respondent's repeated criminal and immigration violations cannot be countenanced. Therefore, the respondent's motion to reopen will also be denied in the exercise of this Board's discretion.

**ORDER:**     The motion to reopen is denied.

Board Member Lauri S. Filppu did not participate in the decision in this case.